UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Warren Singletary, *et al.*,                                    Case No. 3:23-cv-332

              Plaintiffs,

    v.                                                                        MEMORANDUM OPINION
                                          AND ORDER

City of Toledo, *et al.*,

              Defendants.


## I.    INTRODUCTION

Plaintiffs Warren Singletary, Kimberly Cunningham, and Treasured Homes 1. LLC filed this lawsuit against Defendants the City of Toledo and Ken Fischer, alleging Defendants violated the federal Fair Housing Act, 42 U.S.C. § 3601.01 *et seq.*, and the Ohio Fair Housing Act, O.R.C. § 4112.01, *et seq.* (Doc. No. 16). The parties filed cross motions for summary judgment, which are now fully briefed. (Doc. Nos. 22 and 23).

Defendants also filed a motion "for an Order striking paragraph 6 of the Declaration of George Thomas," which Plaintiffs filed in support of their motion for summary judgment. (Doc. No. 24); (*see also* Doc. No. 23-1). Plaintiffs opposed that motion, (Doc. No. 25), and Defendants filed a brief in reply. (Doc. No. 26). For the reasons stated below, I grant Defendants' motion to strike, deny Plaintiffs' motion for partial summary judgment, and grant Defendants' motion for summary judgment in part and deny it in part.

## II.    BACKGROUND

Kimberly Cunningham is the sole member of Treasured Homes 1. LLC, a for-profit company that operates an adult care group home by the same name at 2001 Joffre in Toledo, Ohio. (Doc. No. 21-3 at 7-9).  Treasured Homes is licensed with the Ohio Department of Mental Health and Addiction Services and provides services primarily for older adults.  (*Id.* at 12-13).  Treasured Homes focuses on adults who need some level of assistance to live independently, but who retain a relatively normal level of autonomy.  (*Id.* at 15-16).  Cunningham develops care plans for residents, which can include providing medication reminders, as well as assisting residents with cleaning their living area and with personal hygiene.  (*Id.* at 12-13).  But Treasured Homes is unable to provide care for residents who are unable to use the bathroom on their own or who are bedridden.  (*Id.* at 13, 15-16).  Cunningham also does not provide 24-hour care.  (*Id.* at 17).

Treasured Homes' location on Joffre is classified as a Residential Facility, Small under Toledo Municipal Code § 1116.0221(B).  (*See* Doc. No. 22-1 at 20; Doc. No. 22-3 at 60-61).  A Residential Facility, Small is "[a] state-licensed or State-regulated home or facility that provides room and board, personal care, habilitation services, and supervision in a family setting" for up to as many as eight individuals in need of care because of a physical or mental disability, among other reasons. Toledo Mun. Code § 1116.0221(B).  Group living facilities in this category must be at least 500 feet from any other group living facility.  Toledo Mun. Code § 1104.1001.  The "separation distances between a proposed use and an existing use . . . are measured from property line to property line by the shortest distance."  Toledo Mun. Code § 1106.0208.

Treasured Homes residents pay for services and rent monthly.  Typically, there are three sources of payment for the monthly charges – residents pay a portion, Medicaid covers another portion, and the State of Ohio provides a Residential State Supplement ("RSS") to cover the

remaining cost.  (*Id.* at 16-17).  An individual must have some form of income as well as a physical or mental disability in order to receive an RSS.  (*Id.* at 18).

Cunningham's husband, Warren Singletary, is also involved with Treasured Homes. Singletary takes care of the company's finances and is available to assist residents in case of an emergency.  (Doc. No. 21-4 at 4-5).  Singletary and Cunningham reside in a home they own located at 3431 Woodley Road.  (*Id.* at 4).

In 2021, Singletary purchased a residence located at 3442 Woodley Road with the intention of opening another residential group home.  (*Id.* at 7-8; Doc. No. 22-7 at 4).  At the time of the purchase, Cunningham was considering closing the group home at 2001 Joffre and utilizing the new property for Treasured Homes instead, though she also considered maintaining both properties. (Doc. No. 21-3 at 31-32, 62).  Shortly after Singletary closed on the sale of 3442 Woodley, Cunningham contacted with Ohio Department of Mental Health and Addiction Services to inquire about opening a group home at that property.  (*Id.* at 33-34).  Cunningham learned she would need an architect to draw up plans for the property as well as have the plumbing, electrical, and foundation inspected by the City of Toledo Building Department.  (*Id.*).

A few months earlier, prior to the purchase of 3442 Woodley, Cunningham spoke to several employees of the Toledo Lucas County Plan Commission about her intention to open a group home at that property.  (*Id.* at 35-36).  Many Plan Commission employees were working remotely during the Covid-19 pandemic, and Cunningham recalled leaving "a lot" of messages in addition to having conversations with two employees named Kiley and Tom.  (*Id.* at 36).  After several weeks of back and forth, Cunningham received a voicemail from a male she believed to be Tom telling her she could move forward with her plan to open a group home at 3442 Woodley.  (*Id.*). Cunningham could not recall when she received the voicemail, other than prior to the purchase of 3442 Woodley. (*Id.* at 36-39).

Approximately a month after Singletary closed on the sale of 3442 Woodley, Cunningham contacted the Plan Commission to request a written confirmation of the group home zoning approval to provide to the Ohio Department of Mental Health and Addiction Services.  (*Id.* at 44). At that time, Cunningham was told she could not operate a group home at that address because there was already another group home operating nearby to 3442 Woodley, and City of Toledo zoning ordinances prohibited one group home from operating within 500 feet of another.  (*Id.* at 42-44).

On March 31, 2021, a Woodley Road resident named Kenneth Gallaher sent Toledo City Councilmember Sam Melden an email about "rumors" of a group home being established in the neighborhood.  (Doc. No. 21-2 at 15).  Gallaher raised concerns about the potential residents of the group home, asking if they would "be ex-convicts, drug addicts, drunks, thieves, or general trouble makers?"  (*Id.*).  Melden responded the following day, asking Gallaher for the address of the property he referenced and stating he would look into it.  (*Id.*).  Melden asked Andrea Morrow, his legislative aide, to investigate the matter further.  (*Id.* at 17).

Cunningham contacted Melden by email approximately a week later, explaining that she sought to establish a "senior shared living" home as part of the neighborhood and sought Melden's assistance with "a variance or waiver" of the 500-foot requirement.  (*Id.* at 18); (*see also* Doc. No. 21-3 at 66-69).  Singletary recalled that Melden told him to talk to Tom Gibbons, the Director of the Toledo Lucas County Plan Commission, about seeking a waiver of the zoning restriction because Melden was concerned about setting a precedent in pursuing the waiver himself.  (Doc. No. 21-4 at 27-28).

4

Gibbons explained the only way to avoid the prohibition would be a city council ordinance suspending[1] that section of the zoning code for the 3442 Woodley Road property. (*See* Doc. No. 21-2 at 19-20). If the Toledo City Council suspended the zoning code for that property, Plaintiffs then would need to apply for a special use permit from the Plan Commission before they could open a group home at that address. (Doc. No. 21-1 at 6-8).

Melden was very concerned with the prospect of granting the request for a suspension or waiver of the zoning code because the waiver procedures permitted a single councilmember to grant the waiver without needing the approval of the zoning board or other city councilmembers. (Doc. No. 21-2 at 6). Melden testified he began his term on Toledo City Council in January 2020, just months before four other councilmembers were arrested for accepting bribes in connection with their legislative duties, including assistance with zoning issues and special use permits issued by the Toledo Lucas County Plan Commission. (*Id.*). This context, along with his view that the zoning waiver procedures were a "bad process," convinced Melden that he should not grant the waiver.[2] (*Id.* at 8).

Cunningham also contacted the Fair Housing Center, who represented Cunningham and Treasured Homes in their request for an accommodation and in an appeal to the Board of Zoning Appeals. (Doc. No. 21-3 at 64-65). Those efforts also were unsuccessful. Plaintiffs subsequently initiated this litigation. (*See* Doc. No. 1). They allege violations of the Fair Housing Act, 42 U.S.C. § 3604.01, *et seq.*, ("FHA") and the Ohio Fair Housing Act, Ohio Revised Code § 4112.01, *et seq.* (Doc. No. 16 at 15-19).

---

[1] While the parties and most witnesses use the phrase "waiver," Gibbons clarified that the actual process involves a "suspension" of the zoning code provision rather than a waiver. I use both terms in this opinion to refer to the same process.

[2] Melden testified unequivocally that neither Cunningham nor Singletary ever offered him anything in exchange for approving the waiver. (Doc. No. 21-2 at 9).

### III.    DISCUSSION

#### A.    MOTION TO STRIKE

George Thomas is the CEO of and general counsel for The Fair Housing Center, located in Toledo, Ohio.  (Doc. No. 23-1 at 1).  Thomas "previously communicated with the City of Toledo regarding Ms. Cunningham's request for a reasonable accommodation to operate a group home at 3442 Woodley Drive" in Toledo.  (*Id.*).  Defendants challenge paragraph 6 of Thomas's declaration, in which Thomas states "Ms. Cunningham's request for a reasonable accommodation under the local, state, and federal Fair Housing Act was both reasonable and necessary to afford persons with disabilities the equal opportunity to use and enjoy the dwelling."  (*Id.* at 2).

Defendants argue I must strike paragraph 6 because it "provides either a legal conclusion or [Thomas's] opinion or conjecture that the Plaintiffs should be successful on the 'necessary' and 'reasonable' elements of their claim."  (Doc. No. 24 at 4).  Plaintiffs disagree, arguing Thomas made that statement based upon his personal knowledge and that the statement is admissible because it is relevant to an issue in this case.  (Doc. No. 25 at 2-4).  They also assert Thomas is "uniquely qualified to opine on the fair housing issues that Plaintiffs brought before the Court in this proceeding."  (*Id.* at 5).

While Defendants' motion seeks to strike paragraph 6, the more common approach at the summary judgment stage is for the court to determine whether the challenged evidence should be disregarded.  Rule 56 permits "[a] party to object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  If an affidavit includes matters or statements that are not appropriate for a court to consider at the summary judgment stage, the court may disregard that information.  *See, e.g., Lombard v. MCI Telecomm. Corp.*, 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998) (citing *State Mut. Life Assurance Co. of Am. v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979)).

Plaintiffs did not disclose Thomas as an expert witness prior to the February 1, 2024 deadline I set following the case management conference. (*See* Doc. No. 8). Therefore, I will evaluate paragraph 6 as an opinion offered by a lay witness.

Federal Rule of Evidence 701 provides that a lay witness may testify "in the form of an opinion" if that opinion is "limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Lay witness opinions containing legal conclusions may be excluded as unhelpful to a jury. *United States v. Sheffey*, 57 F.3d 1419, 1425 (6th Cir. 1995).

As the Sixth Circuit has stated, "[t]he problem with testimony containing a legal conclusion is in conveying the witness's[s] unexpressed, and perhaps erroneous, legal standards to the jury." *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985). "The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." *Id.* at 151 (citation omitted).

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . a person residing in or intending to reside in that dwelling . . . ." 42 U.S.C. § 3604(f)(2)(B). Discrimination in this context includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ." *Id.* § 3604(f)(3)(B). A plaintiff bringing a reasonable accommodation claim under the FHA "must prove both the reasonableness and necessity of the requested [accommodation]." *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014).

7

I conclude paragraph 6 of Thomas's declaration must be excluded.  The phrase "reasonable and necessary accommodation" is a term of art that has a specific meaning in the context of discrimination law.  *See, e.g., Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 466 (6th Cir. 1999) (noting the phrase "reasonable accommodation" is a "particular term[ ] of art).[3]  "An accommodation is reasonable when it imposes no fundamental alteration in the nature of a program or undue financial and administrative burdens," and necessary "if, but for the requested accommodation, the plaintiff likely will be denied an equal opportunity to enjoy the housing of his or her choice."  *Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*, 71 F. Supp. 3d 715, 728 (E.D. Mich. 2014) (citing *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir. 1996) and *Hollis*, 760 F.3d at 541) (cleaned up).

Thomas opines that Plaintiffs' requested accommodation satisfies this legal standard without providing any context for the meaning of "reasonable" or "necessary" under the FHA or even acknowledging that those terms have a meaning that differs from "that present in the vernacular." *Torres*, 758 F.2d at 151.  Therefore, I deny Defendants' motion to the extent it seeks to strike paragraph 6 of Thomas' declaration motion but grant the motion to the extent it seeks to exclude paragraph 6 from consideration at the summary judgment stage.

## B.    MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on all claims in Plaintiffs' Amended Complaint. (Doc. No. 22).  Plaintiffs filed a cross motion for summary judgment on the issue of Defendants' liability on all claims, with the amount of damages remaining for a jury trial.  (Doc. No. 23).

---

[3]  While *Workman* involved a claim under the Americans with Disabilities Act ("ADA") rather than the FHA, "'[t]he requirements for reasonable accommodation under the ADA are the same as those under'" the FHA.  *See, e.g., Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 21-30920, 2021 WL 5411220, at *6 (6th Cir. Nov. 19, 2021) (quoting *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002)).

1.      **Standard**

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant and "all justifiable inferences" are drawn in the nonmovant's favor.  *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (citing cases).  A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law.  *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).  "In reviewing cross-motions for summary judgment, the court should 'evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party.'" *Peters v. DCL Med. Lab'y LLC*, 305 F. Supp. 3d 799, 814 (S.D. Ohio 2018) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)).

2.      **Failure to Make a Reasonable Accommodation**

Plaintiffs allege Defendants failed to provide them with a reasonable accommodation in violation of federal and state law.  (Doc. No. 16).  The FHA and the Ohio Fair Housing Act are "substantively identical" and, therefore, federal case law analyzing the FHA applies equally to Ohio Fair Housing Act claims.  *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 n.2 (6th Cir. 2011).

"[An] FHA reasonable-accommodation plaintiff[] must prove both the reasonableness and necessity of the requested modification."  *Hollis*, 760 F.3d at 541.  Additionally, an FHA reasonable-accommodation plaintiff "must prove that, at the time that defendants refused their accommodation request:

(1) plaintiffs (or their residents or associates for whom they made the request) had a disability;

(2) the defendants knew or should reasonably have been expected to know of that disability;

(3) the requested accommodation was necessary to afford the disabled parties an equal opportunity to use and enjoy a dwelling; [ ]

(4) the requested accommodation was reasonable; [and]

(5) the defendants did in fact refuse the request."

*Amber Reineck House v. City of Howell, Mich.*, No. 20-CV-10203, 2022 WL 17650471, at *67 (E.D.

Mich. Dec. 13, 2022) (cleaned up) (citing *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453

F.3d 1175, 1179 (9th Cir. 2006); *Overlook*, 415 F. App'x at 621; and *Hollis*, 760 F.3d at 541).  A

plaintiff bears the burden "to establish each element."  *Hollis*, 760 F.3d at 541 (citations omitted).

As I noted above, a requested accommodation is necessary if it "would redress injuries that

otherwise would prevent a disabled resident from receiving the same enjoyment from the property

as a non-disabled person would receive."  *Id.* (citation omitted).  An accommodation "should be

deemed reasonable if it imposes no fundamental alteration in the nature of a program or undue

financial and administrative burdens."  *Id.* at 542 (citations and internal quotation marks omitted).

  **a.**  **Defense Motion**

Defendants assert they are entitled to summary judgment on Plaintiffs' failure to

accommodate claim because the requested accommodation is both unnecessary and unreasonable.

They assert the waiver is unnecessary because the zoning code already permits disabled individuals

to reside together at 3442 Woodley.  (Doc. No. 22 at 16-17).  And they contend granting a waiver of

the 500-foot zoning condition "would constitute a fundamental alteration to the City's zoning

scheme, as it would essentially gut the City's ability to impose spacing conditions."  (*Id.* at 18).

Defendants rely primarily on *Harding v. City of Toledo*, a 2006 opinion issued by my colleague,

United States District Judge James G. Carr, which also involved an FHA challenge to the City's 500-

foot buffer zoning ordinance for group homes.  433 F. Supp. 2d 867 (N.D. Ohio 2006).  In that

case, Judge Carr denied the plaintiffs' motion for a preliminary injunction prohibiting the City of Toledo from enforcing the 500-foot requirement because the plaintiffs failed to show their requested accommodation was necessary or reasonable.  *Id.* at 872-73.

Judge Carr viewed the 500-foot limitation "as presumptively legitimate" because it was created as part of a settlement agreement resolving earlier litigation over the City of Toledo's group home zoning ordinances.  *Id.* at 872.  He then determined the plaintiffs' requested accommodation was unreasonable because "[t]aken to its logical conclusion, plaintiffs' approach would prohibit cities from enacting ordinances limiting the concentration of any kind of care facility—including, but not limited to, group homes—that houses disabled people."  *Id.* at 873.  Judge Carr also concluded the requested accommodation was "*not* necessary for disabled people to have the equal opportunity to live in a residential neighborhood: Disabled people who do not need to live in adult care facilities can live together anywhere in Toledo because they are presumed to be a household.[4]"  *Id.* at 872 (emphasis in original).  But binding Sixth Circuit precedent undercuts both of those conclusions.

### i.    Reasonableness

First, as to reasonableness, the Sixth Circuit has "rejected the notion that making an exception to a zoning scheme to permit something that would normally be forbidden automatically amounts to a fundamental alteration."  *Anderson v. City of Blue Ash*, 798 F.3d 338, 363 (6th Cir. 2015) (citing *Smith & Lee Assocs.*, 102 F.3d at 796).

While Defendants argue Plaintiffs' requested accommodation "would constitute a fundamental alteration to the City's zoning scheme, as it would essentially gut the City's ability to impose spacing conditions," (Doc. No. 22 at 18), Defendants rely only on Judge Carr's slippery

---

[4]  The Toledo Municipal Code provisions Judge Carr considered are the same provisions which are currently found in the Code.  The Code defines a "household" as "a group of unrelated persons living together [as] the functional equivalent of a family."  T.M.C. § 1115.0904.  The Code also presumes that "[l]iving arrangements for persons with a 'handicap' and/or a 'disability,'" as defined by the FHA and the ADA, qualify as a household.  T.M.C. § 1115.0906

slope argument in *Harding*. They do not explain how a single waiver for 3442 Woodley in fact would prohibit the City from ever enforcing a spacing condition.

Defendants contend that "'a waiver would undermine the particular policy embedded in the distancing statute which is to control excessive geographic concentration of group living facilities in specific areas.'" (Doc. No. 29 at 2) (quoting Doc. No. 22-5 at 8) (emphasis removed). But they do not offer any explanation to support this conclusory assertion. And this lack of explanation is particularly glaring in the face of evidence that the City of Toledo has granted permission for other types of group facilities to operate within less than 500 feet of another group facility. (*See* Doc. No. 21-1 at 7-13). While those instances may have involved different zoning ordinances, they involved the same "policy embedded in the distancing statute," and there is no suggestion that waiving the 500-foot requirement in those circumstances resulted in a fundamental alteration to the zoning code. (Doc. No. 22-5 at 8).

At the summary judgment stage, a defendant must show the plaintiff has not offered evidence to support an essential element of the plaintiff's claim or that, viewing all the evidence in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor. *Anderson*, 477 U.S. at 248. I conclude Defendants have not met their summary judgment burden to show no reasonable jury could find that Plaintiffs' requested accommodation was reasonable.

### ii. Necessity

Nor does *Harding* support the defense argument that the requested accommodation was not necessary. Judge Carr relied in *Harding* on *Oconomowoc Residential Programs v. City of Milwaukee*, a 2002 case from the Seventh Circuit Court of Appeals which held, in relevant part, that "[a]n accommodation is necessary if, without it, the plaintiffs would 'be denied the equal opportunity to live in a residential neighborhood.'" *Harding*, 433 F. Supp. 2d at 872 (quoting *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002)).

But the Sixth Circuit's approach is more narrowly tailored, holding an accommodation is necessary if "but for the requested accommodation . . . , [the plaintiff] 'likely will be denied an equal opportunity to enjoy the housing of [his] choice.'" *Hollis*, 760 F.3d at 541 (quoting *Smith & Lee Assocs.*, 102 F.3d at 795) (first alteration and emphasis added). *See also Anderson*, 798 F.3d at 361 ("Equal use and enjoyment of a dwelling are achieved when an accommodation ameliorates the effects of the disability such that the disabled individual can use and enjoy his or her residence as a non-disabled person could.").

Thus, in general, the necessity inquiry does not focus on whether a denial of a requested accommodation would prevent a plaintiff from living anywhere, but on whether the denial would prevent the plaintiff from living in and obtaining equal enjoyment from a dwelling of the plaintiff's choice.

In this case, the necessity inquiry focuses on whether Defendants' denial of Plaintiffs' requested accommodation would prevent Plaintiffs from opening a new group home at 3442 Woodley. *Cf. Lawrence Cnty. Recovery, LLC v/ Vill. of Coal Grove, Ohio*, --- F. Supp. 3d ---, 2025 WL 1805436, at *7 (S.D. Ohio 2025) (holding landlord plaintiffs alleged a cognizable injury under the FHA "related to their inability to open entirely new independent living homes") (citing *MX Grp., Inc. v. City of Covington, Ky.*, 293 F.3d 326 (6th Cir. 2002)). Cunningham testified that residents at Treasured Homes rely on Ohio's Residential State Supplement program, which requires proof that the applicant for the program has a physical or mental disability.[5] (Doc. No. 21-3 at 18). Without their requested accommodation, Plaintiffs were unable to operate a licensed group home at that location. (*See id.* at 44-47).

---

[5] Cunningham indicated she had only one private pay resident at Treasured Homes in the then-six-year period she had operated that group home. (Doc. No. 21-3 at 17).

Plaintiffs have raised a genuine dispute of material fact as to whether the denial of their requested accommodation would prohibit disabled individuals from residing at 3442 Woodley, because there is evidence that the tenants of that property would rely on disability-related supplemental income in order to pay the cost of living at the property.[6] (*See id.* at 16-18). I deny Defendants' motion for summary judgment as to Plaintiffs' failure to accommodation claims under FHA and Ohio Fair Housing Act against the City of Toledo.

### b.    Plaintiffs' Motion

Plaintiffs contend they are entitled to summary judgment on their failure to accommodate claims because their requested accommodation was both necessary and reasonable. (Doc. No. 23). Because I conclude there is a genuine issue of material fact as to whether the accommodation was reasonable, I need not consider Plaintiffs' other arguments.

According to Plaintiffs, their requested accommodation would not fundamentally alter the City's zoning code because Defendants "already permit group homes and other similar facilities to operate within 500-feet of each other." (*Id.* at 18). They also assert the accommodation would not impose an "administrative burden or financial hardship" on Defendants because Defendants would not have any additional involvement with the permitted property than they would if it was located outside of the 500-foot buffer. (*Id.* at 19). I am not persuaded by these arguments.

Plaintiffs argue their request would not impose a fundamental alteration "because exceptions to this spacing restriction have already been granted by Defendants on numerous occasions for other facilities." (Doc. No. 23 at 16). The facilities to which Plaintiffs refer are drug and alcohol

---

[6] Defendants object that Cunningham's testimony about state verification of disability is "based on hearsay." (Doc. No. 29 at 3). But Rule 56 cautions courts to distinguish between facts that "cannot be presented in a form that would be admissible in evidence," and those that simply were not presented in admissible form in summary judgment briefing. Fed. R. Civ. P. 56(c)(2). Whether Cunningham could testify about the RSS process is immaterial, because Plaintiffs almost certainly could call as a witness an Ohio Department of Mental Health and Addiction Services employee who is competent to testify on those matters.

treatment facilities.  (*See* Doc. No. 21-1 at 7-10).  As Gibbons confirmed, the Toledo Municipal Code allows those facilities to submit an application for a special use permit, but it does not offer the same process for other group living facilities.  *See* Toledo Mun. Code § 1104.1004; (*see also* Doc. No. 21-1 at 10).

Defendants have offered evidence that, in order to waive the 500-foot requirement for 3442 Woodley, Toledo City Council would have to suspend the zoning code requirement and Plaintiffs then would need to apply for a special use permit from the Toledo Lucas County Plan Commission to operate a group facility at that location.  (Doc. No. 21-1 at 7); (*see also* Doc. No. 21-2 at 6-8, 19-20).  Modifying this process to correlate with the zoning ordinances that led to the approval of other 500-foot waivers would require an amendment of the Toledo Municipal Code.  (Doc. No. 21-1 at 7-8).  I conclude there is a genuine factual dispute as to whether this required amendment would constitute a fundamental alteration to the zoning code.

Additionally, the amended process would increase the number of special use permit applications filed with the Plan Commission.  (*See id.* at 7) (noting that, if Plaintiffs obtained a suspension of the zoning code, Plaintiffs then would have to use the special use permit process to obtain approval to operate a group living facility at 3442 Woodley because it would be in violation of the spacing requirements).  There is no evidence in the record as to whether this increase would be negligible or substantial and, therefore, Plaintiffs have not met their summary judgment burden to show there is no dispute of material fact regarding whether their requested accommodation would cause an undue administrative burden.  *See Smith & Lee Assocs.*, 102 F.3d at 795.

Plaintiffs also argue the zoning ordinance "conflicts with state law" and, therefore, Defendants must grant their requested accommodation.  (Doc. No. 23 at 18).  But, as Defendants point out, the Ohio Revised Code permits political subdivisions like the City of Toledo to establish

conditions for the operation of residential facilities in single family residential districts. Ohio Rev. Code § 5119.341(C). Thus, there is no conflict between the City's zoning code and state law.

Therefore, I deny Plaintiffs' motion for summary judgment in their favor on their failure to accommodate claims because there is a genuine dispute of material fact as to whether the requested accommodation is reasonable. Further, I also deny the motion to the extent it relies upon paragraph 6 of George Thomas' declaration.

### 3.     Disparate Treatment

All parties also move for summary judgment on Plaintiffs' disparate treatment claim. Plaintiffs allege they "were singled out and Defendants were intentionally discriminating against them because of bias and prejudice against the persons that Treasured Homes serve. There is a strong basis for that belief since Defendants' adverse decisions were made after receiving the discriminatory email" from Gallaher. (Doc. No. 16 at 14).

A plaintiff who asserts an FHA disparate treatment claim "'must show proof of intentional discrimination.'" *Anderson*, 798 F.3d at 363 (quoting *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012)). "This can be established either through direct evidence of intentional discrimination or though circumstantial evidence using the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *HDC, LLC*, 675 F.3d at 612 (citation omitted). Through either route, the analysis of a disparate treatment claim "focuses on the defendant's intent." *Hollis*, 760 F.3d at 539 (citing *HDC, LLC*, 675 F.3d at 612).

It is unclear which path Plaintiffs seek to pursue. In their motion, Plaintiffs assert "Summary Judgment must be granted because Defendants allowed Gallaher's discriminatory statements to influence its decision-making." (Doc. No. 23 at 20). But, in their opposition brief to Defendants' summary judgment motion, they argue there is evidence of discriminatory intent because "Gallaher's statement and follow up emails were made in close proximity to Melden's

16

decision to deny the waiver request." (Doc. No. 28 at 12). But whether they seek to prove their disparate treatment claim through direct or indirect evidence, Plaintiffs fall short.

The only record evidence which might be construed as discriminatory is found in Gallaher's March 31, 2021 email to Melden. In that email, Gallaher expressed concern about a new group home opening at 3442 Woodley because he did not know who the potential residents would be and speculated that they may be "ex-convicts, drug addicts, drunks, thieves, or general trouble makers." (Doc. No. 23-3 at 4).[7]

But there is no evidence that Gallaher's email influenced Melden's decision to deny Plaintiffs' request for a zoning waiver. Melden testified to exactly the opposite: he "was not . . . concern[ed]" about the potential residents of the group home; he sought to determine whether the property was being maintained in compliance with the zoning code; and his decision to deny the waiver request "had zero to do with this case." (Doc. No. 21-2 at 4-7).

Moreover, Melden did not simply deny Plaintiffs' waiver request. After he received an email from Cunningham on April 26, 2021, requesting a waiver or variance, (*id.* at 18), he spoke with Singletary and Cunningham on several occasions to understand the context of Plaintiffs' request. (Doc. No. 21-4 at 25-28). Melden also reached out to Gibbons to determine if the property could be used as a group home and, "[i]f not, what [was] the appeal process?" (Doc. No. 21-2 at 20). After Singletary expressed understandable frustration at the stalled progress of their waiver request, Melden expressed "empathy" for Plaintiffs' "long ordeal," explained his concern with granting the waiver stemmed from "not hav[ing] the right process in place within our Zoning and Planning processes," and stated he had contacted Gibbons to determine when there might be a final answer to the accommodation request. (*Id.* at 21).

---

[7] As Defendants note, the only individuals within this list who would be part of the protected classes would be those with an addiction but who are not actively using. (*See* Doc. No. 27 at 3).

Plaintiffs argue it is "[i]mportant[]" that "Defendants . . . made their decisions to deny both the waiver request and reasonable accommodation request *after* receiving complaints from Gallaher." (Doc. No. 30 at 16-17) (emphasis in original).  But that fact cannot carry the weight Plaintiffs seek to assign it.  Gallaher's email was the first communication Defendants received about 3442 Woodley, arriving approximately one month before Cunningham submitted her written request for a waiver. Defendants could not have acted on the waiver request before receiving Gallaher's complaints because no waiver request had been made.

Even when viewed in the light most favorable to Plaintiffs, the record evidence does not support the required inference Defendants denied the waiver request "because of" Gallaher's alleged animus toward individuals with disabilities.  *Anderson*, 798 F.3d at 357.  Therefore, I deny Plaintiffs' motion for summary judgment, and grant Defendants' motion, as to Plaintiffs' disparate treatment claim.

### 4.    Immunity

Defendants also move for summary judgment on all claims against Ken Fischer, arguing he is immune under federal and state law.  Fischer is the Commissioner of Building Inspection for the City of Toledo who denied Plaintiffs' request for an accommodation via waiver of the 500-foot group home requirement.  (Doc. No. 22-5 at 3-6).

Ohio law provides that a state employee "is immune from liability unless one of the following applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code."

Ohio Rev. Code § 2744.03(A)(6).

Plaintiffs argue:

> Fischer is not entitled to statutory immunity because he authored the City's rejection letter and did not consult with his supervisor. . . . He then engaged Tom Gibbons to speak at the [Board of Zoning Appeals] hearing in an attempt to have the appeal removed from the agenda despite other instances of the City of Toledo permitting such appeals. . . . The City and Fischer failed to provide any evidence in discovery that Fischer considered HUD's guidance or the Joint Statement by HUD and the DOJ regarding state and local land use laws[8] as applied to the Fair Housing Act. . . . Therefore, ... Fischer acted in a wanton and reckless manner.

(Doc. No. 28 at 17).

"Wanton misconduct occurs when the employee fails to exercise any care; it implies a disposition to perversity and a failure to exercise care toward those to whom care is owed. . . . [A]n employee is 'reckless' when he or she perversely disregards a known risk. Recklessness requires more than mere negligence. The employee must be conscious of the fact that his or her conduct will, in all probability, result in an injury." *Horen v. Bd. of Educ. of Toledo Pub. Schs.*, 2010-Ohio-3631, 2010 WL 3064394, at *10 (Ohio Ct. App. Aug. 6, 2010) (citing *Fabrey v. McDonald Vill. Police Dep't*, 639 N.E.2d 31, 35 (Ohio 1994) and *O'Toole v. Denihan,* 889 N.E.2d 505, 507 (Ohio 2008) (paragraph three of the syllabus)). *See also Fabrey*, 639 N.E.2d at 35 ("The standard for showing wanton misconduct is . . . high.").

Plaintiffs fail to show Fischer acted recklessly or with wanton misconduct in concluding the Toledo Municipal Code did not permit Plaintiffs to operate a group home within 500 feet of another operating group home or in concluding Plaintiffs' requested accommodation was not necessary. Instead, the record evidence establishes Fischer consulted with the City of Toledo Law Department before denying Plaintiffs' request. (*See* Doc. No. 22-5 at 8-9). Moreover, there is no evidence Fischer had the authority to effect the suspension of the Toledo Municipal Code that was a

---

[8] The guidance to which Plaintiffs refer involves recommendations about when and why government officials should engage in an interactive process concerning a FHA requested accommodation. (*See* Doc. No. 28 at 16-17).

necessary first step before the Plan Commission or the Board of Zoning Appeals could consider a special use permit application.  I conclude Fischer is entitled to statutory immunity pursuant to Ohio Revised Code § 2744.06(A)(6).

I also conclude Fischer is entitled to qualified immunity as to Plaintiffs' FHA claim.

"Qualified immunity shields government officials from civil liability in the performance of their duties so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The qualified immunity analysis is a two-step inquiry: (1) whether a constitutional right has been violated; and (2) whether that right was clearly established, though the steps need not be taken in that order."  *Getz*, 833 F.3d at 652 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

A right is clearly established if "existing precedent placed the conclusion that [the defendant] acted unreasonably in these circumstances 'beyond debate.'"  *Mullenix v. Luna*, 577 U.S. 7, 14 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  "[A]n action's unlawfulness can be clearly established from direct holdings, from specific examples describing certain conduct as prohibited, or from the general reasoning that a court employs."  *Baynes v. Cleland*, 799 F.3d 600, 612 (6th Cir. 2015) (citing *Hope v. Pelzer*, 536 U.S. 730, 742-44 (2001)) (internal quotation marks omitted).  In determining whether a right is clearly established, courts in this circuit "'look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits.'"  *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 684 (6th Cir. 2013) (quoting *Baker v. City of Hamilton, Ohio,* 471 F.3d 601, 606 (6th Cir. 2006)).

Plaintiffs fail to show it is clearly established that they have a right to operate a group home within less than 500 feet of another group home.  In *Smith & Lee Associates*, the Sixth Circuit observed that the FHA "prohibits local governments from applying land use regulations in a manner

20

that will exclude people with disabilities entirely from zoning neighborhoods, particularly residential neighborhoods, or that will give disabled people less opportunity to live in certain neighborhoods than people without disabilities." *Smith & Lee Assocs.*, 102 F.3d at 795 (citation omitted).

Fischer's denial of Plaintiffs' accommodation request did not deny disabled individuals from residing in a group home anywhere within the zoning neighborhood containing 3442 Woodley Road, only at a property located within 500 feet of another group home.

None of the cases Plaintiffs cite – *Vance v. City of Maumee, Ohio,* 960 F. Supp. 2d 720 (N.D. Ohio 2013); *Judy B. v. Borough of Tioga,* 889 F. Supp. 792 (M.D. Pa. 1995); *Smith & Lee Assocs.*, 102 F.3d 781; and *Oxford House-C v. City of St. Louis*, 843 F. Supp. 1556 (E.D. Mo. 1994) – clearly establish that the refusal to waive a zoning requirement mandating a certain distance between group homes violates the FHA. (*See* Doc. No. 28 at 18).

In particular, *Oxford House-C* does not support Plaintiffs' argument, much less defeat Defendants' assertion of qualified immunity. That case involved an FHA challenge to a city ordinance that limited the total occupancy of group homes to eight or fewer unrelated disabled residents. *Oxford House-C v. City of St. Louis, Mo.*, 77 F.3d 249, 251 (8th Cir. 1996). After the district court entered judgment in the plaintiffs' favor, the defendants appealed. On appeal, the Eighth Circuit first concluded the City of St. Louis had a "rational basis" for the ordinance and, therefore, the ordinance was valid under the FHA. *Id.* at 252. The Eighth Circuit then reversed the district court, concluding there was no evidence of "unlawful discrimination under the Fair Housing Act." *Id.*

Therefore, I conclude Fischer is entitled to qualified immunity as to Plaintiffs' FHA claims.

## IV.  CONCLUSION

For the reasons stated above, I deny Plaintiffs' motion for partial summary judgment. (Doc. No. 23). I deny Defendants' motion for summary judgment on Plaintiffs' FHA and Ohio Fair

Housing Act failure-to-accommodate claims, and I grant Defendants' motion for summary judgment on Plaintiffs' intentional discrimination claims.  (Doc. No. 22).  Finally, I conclude Defendant Ken Fischer is entitled to qualified and statutory immunity on all claims and dismiss him from this litigation.

       So Ordered.

s/ Jeffrey J. Helmick
United States District Judge